IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| v. | § | Case No. 4:22CR 110 |
| | § | Judge Jordan |
| ███████████████ | § | |
| ███████████████ | § | |
| ███████████████ | § | |
| ERIC REED MARASCIO (6) | § | |
| a/k/a Phoenix Marcon | § | |
| ███████████████ | § | |



FILED

MAY 12 2022

Clerk, U.S. District Court
Texas Eastern

**INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

**General Allegations**

At all times material to the facts set forth in this Indictment:

Indictment
Page 1 of 15

1. Defendants ▋ and ▋ were individuals residing in the Eastern District of Texas.

2. On or about August 19, 2013, defendant ▋ opened a bank account at BB&T Bank ending in 6172 ("▋ Account"), listing ▋ as the sole authorized signer.

3. On or about June 30, 2016, defendant ▋ opened a bank account at Woodforest National Bank ending in 0079 ("▋ Account"), listing ▋ as the sole authorized signer.

4. On or about January 2, 2019, ▋ opened a personal bank account at JP Morgan Chase Bank ending in 1815 ("▋ Account"), listing ▋ as the sole authorized signer.

5. On or about March 15, 2018, defendant ▋ registered a business called Cord Newman Global, LLC with the state of Nevada. On or about May 8, 2018, ▋ opened a business bank account at JP Morgan Chase Bank ending in 1302 ("▋ Account"), under the name of Cord Newman Global, listing ▋ as the sole authorized signer.

### *The Small Business Administration*

6. The United States Small Business Administration (SBA) was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's

economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

7.  As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

### *The Paycheck Protection Program*

8.  The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP).

9.  To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under

the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

10. A PPP loan application was processed by a participating lender. If a PPP loan application were approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

11. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

## COUNT 1

Violation: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

12. From approximately in or around May 2020, and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, the defendants,



**Eric Marascio**

along with others both known and unknown to the Grand Jury, did knowingly and willfully conspire and agree to commit wire fraud, in violation of 18 U.S.C. § 1343.

### Overview of the Conspiracy

13. The defendants, led by ▮▮▮ and ▮▮▮, executed a scheme to defraud lenders and the SBA. ▮▮▮ recruited co-conspirators to use an existing business or create a business to submit applications to obtain PPP funding. Once enlisted, ▮▮▮ assisted his co-conspirators with the application paperwork, including fabricating supporting documentation and submitting the application through the online portals. On the applications, the defendants misrepresented material information such as the true nature of their business, the number of employees, and the amount of payroll. Based on these material misrepresentations, the SBA and other financial institutions approved and issued

Indictment
Page 5 of 15

loans to the defendants. Once in receipt of the fraudulently obtained funds, the defendants did not use the money as intended, such as to pay employee salaries, cover fixed debt or utility payments, or continue health care benefits for employees. Instead, the defendants typically paid ▇ and ▇ transferred money to their personal accounts, and spent the funds on various personal purchases. In other instances, the defendants sent the fraudulently obtained funds to ▇ for purported investment in foreign exchange markets. In total, the defendants fraudulently obtained at least 16 loans and at least $3.5 million.

### Purpose of the Conspiracy

14. It was the general purpose of the conspiracy for the defendants to unlawfully and unjustly enrich themselves by obtaining PPP loan proceeds through materially false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Conspiracy

15. The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among others, the following:

   a. The defendants registered and used sham, non-operational businesses, or in other instances existing businesses, under which they could submit PPP applications.

   b. The defendants opened bank accounts under their name and their businesses to receive, deposit, and transfer PPP funds.

   c. The defendants submitted materially false PPP applications, lying about, among other things, the number of employees and monthly payroll expenses.

    d.     The defendants submitted falsified and fabricated supporting documentation with their loan applications.

    e.     The defendants submitted the applications and accessed their PPP loan accounts using the internet, frequently from an internet protocol address ("IP address) that resolved back to ▮▮▮▮▮▮▮▮ residence in Lewisville, Texas, in the Eastern District of Texas.

    f.     The defendants used the PPP funds for unauthorized personal purposes, including cash withdrawals, gold and silver purchases, luxury jewelry items, and vehicles.

    g.     The defendants paid a portion of the PPP funds to co-conspirators ▮▮▮▮▮ and ▮▮▮▮▮

    h.     The defendants sent PPP funds to ▮▮▮▮▮ to invest in foreign exchange markets.

    i.     The defendants caused transmissions that affected interstate commerce by sending wire transfers and by accessing and submitting the PPP applications online.

### Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy, the following acts, among others, were committed in the Eastern District of Texas and elsewhere.

### *Cord Newman Global's Fraudulent PPP Application*

16.     On or about June 20, 2020, Cord Newman Global submitted a materially false PPP loan application to Kabbage, Inc. ▮▮▮▮▮ signed the PPP application as the primary contact and designated ▮▮▮▮▮ Account as the bank account to receive the loan funds. On the application, ▮▮▮▮▮ certified that:

> The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments as

specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

The Cord Newman Global PPP loan account was accessed electronically from an IP address that resolved to defendant ▮▮▮▮▮ residence in Lewisville, Texas, in the Eastern District of Texas. This same IP address was also tied to the PPP loan accounts for the following co-conspirators: ▮▮▮▮▮ ▮▮▮▮▮ and ▮▮▮▮▮

17. The Cord Newman Global PPP application falsely stated that the business had 9 employees and had an average monthly payroll expense of approximately $90,382. In reality, Cord Newman Global had no employees other than ▮▮▮▮▮ and had no payroll or other identifiable business expenses. In support of the PPP application, ▮▮▮▮▮ submitted documentation such as voided checks, IRS Schedule C forms, and invoices. However, the documentation was false and fabricated, as the invoices contained basic errors such as references to "Cord Welborn Global" instead of the actual business name—Cord Newman Global.

18. On or about June 23, 2020, Kabbage funded the PPP loan for Cord Newman Global, and sent $225,954 to ▮▮▮▮▮ Account.

### *Misuse of PPP Funds*

19. On or about June 24, 2020, approximately one day after obtaining the PPP loan, ▮▮▮▮▮ wired more than half the PPP funds—approximately $140,000—to ▮▮▮▮▮

Account. Two days later, on or about June 26, 2020, ▮ wired approximately $22,600 to ▮ Account. Neither ▮ nor ▮ were employees of Cord Newman Global.

20. Once in receipt of Cord Newman Global's PPP funds, ▮ then transferred that money, along with other PPP funds, to ▮ Account for investment in purported foreign exchange markets. Specifically:

   a. On or about June 13, 2020, ▮ applied for and received a $225,895 PPP loan for his own business, Alpha Operators.

   b. Between on or about June 23, 2020 and on or about July 2, 2020, ▮ and ▮ transferred a total of approximately $421,000 of PPP funds to ▮ Account.

   c. On or about July 3, 2020, ▮ combined $179,000 from the Alpha Operators PPP loan along with the $421,000 from his co-conspirators, and sent approximately $600,000 of PPP funds to ▮ Account.

21. Less than three weeks later, on or about July 24, 2020, ▮ wired approximately $1.4 million to an account at the Commonwealth Bank of Australia in Sydney. The $1.4 million dollars consisted of approximately $600,000 sourced by ▮ as well as approximately $830,000 sent directly from co-conspirators recruited by ▮ including ▮, **Eric Marascio**, ▮, and ▮

### Other Fraudulent PPP Loans

22. The defendants and their co-conspirators fraudulently applied for and obtained several other PPP loans during the course of their scheme. The funds were not

used for the designated purposes under the CARES Act, such as employee payroll, health care benefits, or utilities payments. Instead, the funds were withdrawn in cash, spent on vehicles and jewelry, or sent to co-conspirators such as ▮▮▮▮ or ▮▮▮▮ For instance:

a. On or about June 13, 2020, ▮▮▮▮ obtained a PPP loan for approximately $185,802 for Powermove Investment. Of the PPP funds obtained, ▮▮▮▮ sent approximately $30,000 to ▮▮▮▮ and used approximately $99,000 as a down payment for a home.

b. On or about June 16, 2020, ▮▮▮▮ obtained a PPP loan for approximately $213,925 for SmartRX. Of the PPP funds obtained, ▮▮▮▮ paid approximately $5,000 to ▮▮▮▮ and invested approximately $200,000 with ▮▮▮▮

c. On or about June 17, 2020, ▮▮▮▮ obtained a PPP loan for approximately $225,754 for St. John Enterprises. Of the PPP funds obtained, ▮▮▮▮ sent approximately $22,579 to ▮▮▮▮ and invested approximately $170,000 with ▮▮▮▮

d. On or about June 19, 2020, **Eric Marascio** obtained a PPP loan for approximately $225,745 for Hazelnut Café. Of the PPP funds obtained, **Marascio** sent approximately $25,000 to ▮▮▮▮ and invested approximately $150,000 with ▮▮▮▮

e. On or about June 20, 2020, ▮▮▮▮ obtained a PPP loan for approximately $233,231 for Ceemac Holdings. Of the PPP funds obtained, ▮▮▮▮ sent approximately $10,000 to ▮▮▮▮ and invested approximately $180,000 with ▮▮▮▮

f. On or about June 20, 2020, ▮▮▮▮ obtained a PPP loan for approximately $215,939 for Green Forest Sprinklers. Of the PPP funds obtained, ▮▮▮▮ sent approximately $100,000 to ▮▮▮▮ and invested approximately $100,000 with ▮▮▮▮

g. On or about June 20, 2020, ▮▮▮▮ obtained a PPP loan for approximately $184,375 for GHatley Roofing & Construction. The IP address

captured by the lender resolved to ▮▮▮▮ residence in the Eastern District of Texas. Of the PPP funds obtained, ▮▮▮▮ made cash withdrawals and used approximately $69,000 to purchase a vehicle.

h. On or about June 23, 2020, ▮▮▮▮▮▮▮▮▮▮ obtained a PPP loan for approximately $225,554 for Exotic World Motor Cars. Of the PPP funds obtained, ▮▮▮▮ sent approximately $11,600 to ▮▮▮▮ and purchased vehicles for inventory.

i. On or about June 24, 2020, ▮▮▮▮▮▮▮▮▮▮ obtained a PPP loan for approximately $227,422 for Silver Skies Construction. Of the PPP funds obtained, ▮▮▮▮ paid co-conspirator ▮▮▮▮ who obtained his own separate loan, approximately $209,000.

j. On or about June 26, 2020, ▮▮▮▮▮▮ obtained a PPP loan for approximately $222,385 for NXT Level Autos. Of the PPP funds obtained, ▮▮▮▮ sent approximately $100,000 to ▮▮▮▮ and used the funds at restaurants and for travel.

k. On or about June 26, 2020, ▮▮▮▮▮▮▮▮▮▮ obtained a PPP loan for approximately $224,214 for FMP Media Group. Of the PPP funds obtained, ▮▮▮▮ sent approximately $22,400 to ▮▮▮▮ and made various luxury purchases, including at Louis Vuitton.

l. On or about June 26, 2020, ▮▮▮▮▮▮ obtained a PPP loan for approximately $224,287 for Elite Energy Management. Of the PPP funds obtained, ▮▮▮▮ sent approximately $100,000 to ▮▮▮▮ made cash withdrawals, and transferred approximately $70,000 to a personal bank account.

m. On or about June 27, 2020, ▮▮▮▮▮▮ obtained a PPP loan for approximately $226,300 for Texas Granite Direct. The PPP funds were credited to ▮▮▮▮ bank account, who then sent approximately $22,000 to ▮▮ and approximately $15,000 to ▮▮ Using the PPP funds, ▮▮▮▮ made cash withdrawals and luxury purchases, including at Cartier.

n. On or about June 27, 2020, ▮▮▮▮▮▮ obtained a PPP loan for approximately $223,885 for Harry Chang S Corp. Of the PPP funds obtained, ▮▮▮▮ sent approximately $100,000 to ▮▮▮▮ and invested approximately $100,000 with ▮▮▮▮

Indictment
Page 11 of 15

The chart below summarizes some of the loans obtained by the defendants during their scheme:

| Date of Loan (on or about) | Business Name | Application Signer(s) and Funds Recipient(s) | Amount Funded (Approximate) |
|---|---|---|---|
| June 13, 2020 | Alpha Operators | | $225,895 |
| June 13, 2020 | Powermove Investments | | $185,802 |
| June 16, 2020 | SmartRX | | $213,925 |
| June 17, 2020 | St. John Enterprises | | $225,754 |
| June 19, 2020 | Hazelnut Café | | $225,745 |
| June 20, 2020 | Ceemac Holdings | | $233,231 |
| June 20, 2020 | Cord Newman Global | | $225,954 |
| June 20, 2020 | Green Forest Sprinklers | | $215,939 |
| June 20, 2020 | GHatley Roofing & Construction | | $184,375 |
| June 23, 2020 | Exotic World Motor Cars | | $226,554 |
| June 24, 2020 | Silver Skies Construction | | $227,422 |
| June 26, 2020 | NXT Level Autos | | $222,385 |
| June 26, 2020 | FMP Media Group | | $224,214 |
| June 26, 2020 | Elite Energy Management | | $224,287 |

| June 27, 2020 | Texas Granite Direct | ▉ | $226,300 |
| June 27, 2020 | Harry Chang S Corp | ▉ | $223,885 |

23. In sum, the defendants obtained at least 16 loans, fraudulently drawing on at least $3.5 million of funds that were earmarked for emergency pandemic relief.

All in violation of 18 U.S.C. § 1349.

Indictment
Page 13 of 15

# NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

1.      The allegations contained in Count One are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendants have an interest.

2.      Upon conviction of any violation of 18 U.S.C. § 1349, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

3.      The property which is subject to forfeiture, includes but is not limited to the following:

    a.  All funds subject to forfeiture in bank accounts receiving or transferring the fraudulently obtained proceeds; and

    b.  A money judgment, and all interest and proceeds traceable thereto, representing the proceeds of the offenses, for which the defendants are jointly and severally personally liable.

4.      Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.        has been placed beyond the jurisdiction of the court;

    d.        has been substantially diminished in value; or

    e.        has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of the defendants.

5.        By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

BRIT FEATHERSTON
UNITED STATES ATTORNEY

_____        5/12/22
ANAND VARADARAJAN        Date
G.R. JACKSON
Assistant United States Attorneys

Indictment
Page 15 of 15

Case 4:22-cr-00110-SDJ-CAN *SEALED* Document 49 Filed 05/12/22 Page 16 of 16 PageID #: 16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § § § § § § § § § § § § § § § § § § § § § § § § | **SEALED** <br><br> Case No. 4:22CR <br> Judge |
| v. | | |
|  <br> ERIC REED MARASCIO (6) <br> a/k/a Phoenix Marcon | | |

## NOTICE OF PENALTY

### COUNT 1

Violation: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Penalty: Imprisonment up to 20 years, a fine up to $250,000, or both; if the violation affected a financial institution, then imprisonment up to 30 years, a fine up to $1,000,000, or both; supervised release up to 5 years.

Special Assessment: $100.00