2012 WL 472920
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

OPINION
**Do Not Publish Tex.R.App. P. 47**
Court of Appeals of Texas,
Dallas.

Eric Reed MARASCIO, Appellant
v.
The STATE of Texas, Appellee.

Nos. 05–10–01025–CR, 05–10–01026–CR, 05–10–01027–CR.
|
Feb. 15, 2012.
|
Discretionary Review Refused Mar. 20, 2013.



On Appeal from the 380th Judicial District Court, Collin County, Texas, Trial Court Cause No.'s 380–80601–09, 380–80602–09, 380–80603–09.

**Attorneys and Law Firms**

William L. Schultz, Lydia M.V. Brandt, for Eric Reed Marascio.

John R. Roach Sr., for State of Texas.

Before Justices FITZGERALD, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice RICHTER.

*1 A jury found appellant guilty on three charges of felony bail jumping and failure to appear and sentenced him to eight years' imprisonment and a $10,000 fine on each charge. In two issues on appeal, appellant contends the trial court erred in admitting false identification evidence and expert testimony that was not reliable. In a cross-point, the State requests that we reform the judgments to correctly name the judges presiding at trial. Finding no reversible error, we reform the judgments and as reformed, affirm.

## BACKGROUND

After appellant was arrested for making a false statement to obtain property or credit, money laundering, and engaging in organized criminal activity, his bond was set at $300,000. In a subsequent bond-reduction hearing, appellant's bond was lowered to $5,000 cash on each of the three cases. Appellant was also required to wear an electronic leg monitor ("ELM") and surrender his passport. The terms of appellant's release required that he be present at all court settings and wear his ELM twenty-four hours a day.

After appellant was released, he met with some men who claimed they could eliminate appellant's felony charges. Their plan required appellant to travel to Washington, D.C. to file documents renouncing his U.S. citizenship, based on a theory that he would then no longer be subject to state or federal law. One of the men, Marlon Brown, claimed to be an attorney.

Appellant's pre-trial hearing was set for March 25, 2009. Two days before the hearing, appellant and Brown appeared in the Collin County clerk's office to present a federal lawsuit appellant had filed against the judge, the district attorney, the clerk, and numerous others. Brown claimed appellant was being held illegally and demanded that his ELM be removed. The clerk declined.

Appellant did not appear for his pre-trial hearing. Deputy Hugh McCarley was able to track appellant's ELM from a location near downtown Dallas to surrounding neighborhoods until approximately 11:59 a.m. At that time, the deputy received a "strap tamper warning." The ELM's signal eventually became stationary, but the unit was never recovered.

The day after appellant failed to appear for his pre-trial conference, he withdrew all funds from his bank account. Shortly thereafter, he appeared at a friend's apartment and stated that he had removed his ELM so that he could go to Washington, D.C. to clear his name. Appellant hid from the police at his friend's apartment for about a month while he prepared for his trip. Appellant's trial was set for April 20, but he did not appear.

Appellant left the state and traveled to Washington, D.C. with Michael Hill. The two were eventually apprehended in South Carolina. When approached by the police, appellant identified himself as "Reed Marcon." Officers subsequently recovered a "World Government of World Citizens Passport" issued by the "World Service Authority," and picture identification identifying appellant as "Reed Marcon El," a "Moor National," along with a debit card in the same name. The same type of false identification was also recovered from Hill. Appellant was arrested and returned to Texas, where he was indicted for knowingly and intentionally failing to appear in each of his three cases. The jury found appellant guilty on three of six indictments, and sentenced him to three eight-year terms of imprisonment and a $10,000 fine on each. The judge ordered the sentences to be served concurrently. This appeal followed.

## ANALYSIS

*Evidence of Extraneous Offense*
*2 In his first issue, appellant asserts the trial court erred in admitting evidence that he and Hill possessed "alternative" identification when they were captured in South Carolina. The evidence about which appellant complains includes a passport, debit card, and identification card in the name of "Reed Marcon" or "Reed Marcon El," a "Moor national."[1] According to appellant, this extraneous evidence was not relevant to the charged offense and was inadmissible under rule 404(b) because the documents were not created or obtained until the month after his failure to appear. In the alternative, appellant argues that the probative value of the evidence was outweighed by its prejudicial effect. We disagree.

We review claims challenging the admission of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App.2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* at 343–44 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g)). Generally, a trial court's ruling to admit evidence of an extraneous offense is within the zone of reasonable disagreement if the evidence is relevant to a material issue and if the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice. *Id.* at 344.

Under Rule 404(b) of the Texas Rules of Evidence, evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." *Berry v. State*, 233 S.W.3d 847, 858 (Tex.Crim.App.2007) (quoting TEX.R. EVID. 404(b)). However, extraneous offense evidence may be admissible when it has relevance apart from character conformity. *Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App.2003). In particular, such evidence may be admissible

as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R. EVID. 404(b); *see De La Paz,* 279 S.W.3d at 342–43.

Evidence is relevant if it makes the existence of a material fact more or less probable than without the evidence. *Moses v. State,* 105 S.W.3d 622, 626 (Tex.Crim.App.2003). Here, Hill's and appellant's false identification documents were part of the circumstances of appellant's preparation, flight, arrest, and plan to avoid prosecution for his crimes. The evidence also tends to establish consciousness of guilt. Evidence of flight evinces a consciousness of guilt. *Clay v. State,* 240 S.W.3d 895, 905 n. 11 (Tex.Crim.App.1997). Similarly, the fact that a defendant presents false identification, is also admissible to show consciousness of guilt. *See Felder v. State,* 848 S.W.2d 85, 97 (Tex.Crim.App.1992).

In addition, the false identification evidence was also relevant to rebut appellant's reasonable excuse defense. Appellant testified he did not believe he was required to go to court because of the lawsuit he filed against the government. Thus, evidence that he concealed his identity and left the state was probative as to appellant's mental state and whether he was aware that he committed a crime when he failed to appear in court. Although appellant claimed he obtained the false identification to enable him to open a new business account, the fact that his traveling companion, also a fugitive, possessed similar false identification tends to make the existence of this claimed fact less probable.

*3 Appellant further argues that even if the false identification documents were permissible under rule 404(b), they were unfairly prejudicial because of a strong tendency to influence the jury's decision in an improper manner. Texas Rule of Evidence 403 provides: "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. All testimony will be prejudicial to one party or the other. *Joiner v. State,* 825 S.W.2d 701, 708 (Tex.Crim.App.1992). It is only when a clear disparity exists between the degree of prejudice of the proffered evidence and its probative value that rule 403 is applicable. *Id.* Unfair prejudice does not mean the evidence injures the opponent's case —the central point to offering evidence. *Rogers v. State,* 991 S.W.2d 263, 266 (Tex.Crim.App.1999). Rather, it refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*

In the present case, the evidence of appellant's false identification was highly probative, and there is nothing in the record to suggest the evidence influenced the jury to decide the case on an improper basis. Indeed, there was other substantial evidence of appellant's guilt, including his own admission that the terms of his release required him to appear in court and he failed to do so. Although the connection between the evidence of Hill's false identification and the material fact may be more tenuous, we cannot characterize the trial court's ruling as outside the zone of reasonable disagreement. And even if the Hill evidence had marginal probative value, there is no indication of any prejudicial effect. Appellant testified that he and Hill changed their names, and the names reflected on the false passports were their names in the "Republic of Muʻur."[2] Therefore, we conclude the trial court did not abuse its discretion in admitting the evidence. Appellant's first issue is overruled.

*Expert Testimony*

In his second issue, appellant argues the trial court erred in admitting the expert testimony of Deputy McCarley because the State failed to meet its burden to establish that the testimony was reliable. But we need not determine whether the trial court erred in admitting the testimony because even if it did, the error was harmless.

The erroneous admission of expert testimony is non-constitutional error. *See Coble v. State,* 330 S.W.3d 253, 280 (Tex.Crim.App.2010). Accordingly, any error must be disregarded unless it affected appellant's substantial rights. *See* TEX.R.APP. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble,* 330 S.W.3d at 280 (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such error is harmless. *Id.* (citing *Johnson v. State,* 967 S.W.2d 410,

417 (Tex.Crim.App.1998)). "In making a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence." *Id.*

*\*4* Appellant's complaint is directed toward Deputy McCarley's testimony about the monitoring of appellant's ELM on the day appellant failed to appear for his pre-trial hearing. But when appellant testified, he substantiated Deputy McCarley's observations about his location that day. Appellant also admitted that he removed his ELM and failed to appear in court. "It is well established that the admission of improper evidence cannot be urged as grounds for reversal where the defendant gives testimony on direct examination which establishes the same facts as those to which an objection is addressed." *Thompson v. State,* 652 S.W.2d 770, 773 (Tex.Crim.App.1981); *see also Lane v. State,* 151 S.W.3d 188, 193 (Tex.Crim.App.2004) (stating any error in admitting evidence is cured where the same evidence is admitted elsewhere without objection). Thus, on this record, we cannot conclude appellant suffered harm. Appellant's second issue is overruled.

*Reformation of the Judgments*

In a cross-point, the State requests that we reform the judgments to correctly identify the judges who presided over this case at trial. This court has the power and even a duty to correct a clerical error on a judgment form to properly reflect what occurred in the trial court as shown by the record. TEX.R.APP. P. 43.2(b); *French v. State,* 830 S.W.2d 607, 609 (Tex.Crim.App.1992). The judgments state that Judge Suzanne Wooten presided over the trial of this matter. But the record reflects that Judge Quay Parker presided over the guilt/innocence phase and Judge John McCraw, Jr. presided over the punishment phase of trial. Therefore, we sustain the State's cross-point and reform the judgments to reflect that Judge Quay Parker presided over the guilt/innocence phase and Judge John McCraw, Jr. presided over the punishment phase of this trial. As reformed, the trial court's judgments are affirmed.

**All Citations**

Not Reported in S.W.3d, 2012 WL 472920

**Footnotes**

| | |
|---|---|
| 1 | Hill possessed similar false identification in the name of "Michael Mu'ur El." |
| 2 | On cross-examination, appellant testified he believes the "Republic of Mu'ur" is located "somewhere in Morocco." |

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 472920
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**OPINION**
**Do Not Publish Tex.R.App. P. 47**
Court of Appeals of Texas,
Dallas.

Eric Reed MARASCIO, Appellant

v.

The STATE of Texas, Appellee.

Nos. 05–10–01025–CR, 05–10–01026–CR, 05–10–01027–CR.
|
Feb. 15, 2012.
|
Discretionary Review Refused Mar. 20, 2013.

On Appeal from the 380th Judicial District Court, Collin County, Texas, Trial Court Cause No.'s 380–80601–09, 380–80602–09, 380–80603–09.

**Attorneys and Law Firms**

William L. Schultz, Lydia M.V. Brandt, for Eric Reed Marascio.

John R. Roach Sr., for State of Texas.

Before Justices FITZGERALD, RICHTER, and LANG–MIERS.

**OPINION**

Opinion By Justice RICHTER.

*1 A jury found appellant guilty on three charges of felony bail jumping and failure to appear and sentenced him to eight years' imprisonment and a $10,000 fine on each charge. In two issues on appeal, appellant contends the trial court erred in admitting false identification evidence and expert testimony that was not reliable. In a cross-point, the State requests that we reform the judgments to correctly name the judges presiding at trial. Finding no reversible error, we reform the judgments and as reformed, affirm.

**BACKGROUND**

After appellant was arrested for making a false statement to obtain property or credit, money laundering, and engaging in organized criminal activity, his bond was set at $300,000. In a subsequent bond-reduction hearing, appellant's bond was lowered to $5,000 cash on each of the three cases. Appellant was also required to wear an electronic leg monitor ("ELM") and surrender his passport. The terms of appellant's release required that he be present at all court settings and wear his ELM twenty-four hours a day.

After appellant was released, he met with some men who claimed they could eliminate appellant's felony charges. Their plan required appellant to travel to Washington, D.C. to file documents renouncing his U.S. citizenship, based on a theory that he would then no longer be subject to state or federal law. One of the men, Marlon Brown, claimed to be an attorney.

Appellant's pre-trial hearing was set for March 25, 2009. Two days before the hearing, appellant and Brown appeared in the Collin County clerk's office to present a federal lawsuit appellant had filed against the judge, the district attorney, the clerk, and numerous others. Brown claimed appellant was being held illegally and demanded that his ELM be removed. The clerk declined.

Appellant did not appear for his pre-trial hearing. Deputy Hugh McCarley was able to track appellant's ELM from a location near downtown Dallas to surrounding neighborhoods until approximately 11:59 a.m. At that time, the deputy received a "strap tamper warning." The ELM's signal eventually became stationary, but the unit was never recovered.

The day after appellant failed to appear for his pre-trial conference, he withdrew all funds from his bank account. Shortly thereafter, he appeared at a friend's apartment and stated that he had removed his ELM so that he could go to Washington, D.C. to clear his name. Appellant hid from the police at his friend's apartment for about a month while he prepared for his trip. Appellant's trial was set for April 20, but he did not appear.

Appellant left the state and traveled to Washington, D.C. with Michael Hill. The two were eventually apprehended in South Carolina. When approached by the police, appellant identified himself as "Reed Marcon." Officers subsequently recovered a "World Government of World Citizens Passport" issued by the "World Service Authority," and picture identification identifying appellant as "Reed Marcon El," a "Moor National," along with a debit card in the same name. The same type of false identification was also recovered from Hill. Appellant was arrested and returned to Texas, where he was indicted for knowingly and intentionally failing to appear in each of his three cases. The jury found appellant guilty on three of six indictments, and sentenced him to three eight-year terms of imprisonment and a $10,000 fine on each. The judge ordered the sentences to be served concurrently. This appeal followed.

## ANALYSIS

*Evidence of Extraneous Offense*

\*2 In his first issue, appellant asserts the trial court erred in admitting evidence that he and Hill possessed "alternative" identification when they were captured in South Carolina. The evidence about which appellant complains includes a passport, debit card, and identification card in the name of "Reed Marcon" or "Reed Marcon El," a "Moor national."[1] According to appellant, this extraneous evidence was not relevant to the charged offense and was inadmissible under rule 404(b) because the documents were not created or obtained until the month after his failure to appear. In the alternative, appellant argues that the probative value of the evidence was outweighed by its prejudicial effect. We disagree.

We review claims challenging the admission of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App.2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* at 343–44 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g)). Generally, a trial court's ruling to admit evidence of an extraneous offense is within the zone of reasonable disagreement if the evidence is relevant to a material issue and if the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice. *Id.* at 344.

Under Rule 404(b) of the Texas Rules of Evidence, evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." *Berry v. State*, 233 S.W.3d 847, 858 (Tex.Crim.App.2007) (quoting TEX. R. EVID. 404(b)). However, extraneous offense evidence may be admissible when it has relevance apart from character conformity. *Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App.2003). In particular, such evidence may be admissible

as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R. EVID. 404(b); *see De La Paz,* 279 S.W.3d at 342–43.

Evidence is relevant if it makes the existence of a material fact more or less probable than without the evidence. *Moses v. State,* 105 S.W.3d 622, 626 (Tex.Crim.App.2003). Here, Hill's and appellant's false identification documents were part of the circumstances of appellant's preparation, flight, arrest, and plan to avoid prosecution for his crimes. The evidence also tends to establish consciousness of guilt. Evidence of flight evinces a consciousness of guilt. *Clay v. State,* 240 S.W.3d 895, 905 n. 11 (Tex.Crim.App.1997). Similarly, the fact that a defendant presents false identification, is also admissible to show consciousness of guilt. *See Felder v. State,* 848 S.W.2d 85, 97 (Tex.Crim.App.1992).

In addition, the false identification evidence was also relevant to rebut appellant's reasonable excuse defense. Appellant testified he did not believe he was required to go to court because of the lawsuit he filed against the government. Thus, evidence that he concealed his identity and left the state was probative as to appellant's mental state and whether he was aware that he committed a crime when he failed to appear in court. Although appellant claimed he obtained the false identification to enable him to open a new business account, the fact that his traveling companion, also a fugitive, possessed similar false identification tends to make the existence of this claimed fact less probable.

**\*3** Appellant further argues that even if the false identification documents were permissible under rule 404(b), they were unfairly prejudicial because of a strong tendency to influence the jury's decision in an improper manner. Texas Rule of Evidence 403 provides: "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. All testimony will be prejudicial to one party or the other. *Joiner v. State,* 825 S.W.2d 701, 708 (Tex.Crim.App.1992). It is only when a clear disparity exists between the degree of prejudice of the proffered evidence and its probative value that rule 403 is applicable. *Id.* Unfair prejudice does not mean the evidence injures the opponent's case —the central point to offering evidence. *Rogers v. State,* 991 S.W.2d 263, 266 (Tex.Crim.App.1999). Rather, it refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*

In the present case, the evidence of appellant's false identification was highly probative, and there is nothing in the record to suggest the evidence influenced the jury to decide the case on an improper basis. Indeed, there was other substantial evidence of appellant's guilt, including his own admission that the terms of his release required him to appear in court and he failed to do so. Although the connection between the evidence of Hill's false identification and the material fact may be more tenuous, we cannot characterize the trial court's ruling as outside the zone of reasonable disagreement. And even if the Hill evidence had marginal probative value, there is no indication of any prejudicial effect. Appellant testified that he and Hill changed their names, and the names reflected on the false passports were their names in the "Republic of Mu'ur."[2] Therefore, we conclude the trial court did not abuse its discretion in admitting the evidence. Appellant's first issue is overruled.

*Expert Testimony*
In his second issue, appellant argues the trial court erred in admitting the expert testimony of Deputy McCarley because the State failed to meet its burden to establish that the testimony was reliable. But we need not determine whether the trial court erred in admitting the testimony because even if it did, the error was harmless.

The erroneous admission of expert testimony is non-constitutional error. *See Coble v. State,* 330 S.W.3d 253, 280 (Tex.Crim.App.2010). Accordingly, any error must be disregarded unless it affected appellant's substantial rights. *See* TEX.R.APP. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble,* 330 S.W.3d at 280 (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such error is harmless. *Id.* (citing *Johnson v. State,* 967 S.W.2d 410,

417 (Tex.Crim.App.1998)). "In making a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence." *Id.*

*4 Appellant's complaint is directed toward Deputy McCarley's testimony about the monitoring of appellant's ELM on the day appellant failed to appear for his pre-trial hearing. But when appellant testified, he substantiated Deputy McCarley's observations about his location that day. Appellant also admitted that he removed his ELM and failed to appear in court. "It is well established that the admission of improper evidence cannot be urged as grounds for reversal where the defendant gives testimony on direct examination which establishes the same facts as those to which an objection is addressed." *Thompson v. State,* 652 S.W.2d 770, 773 (Tex.Crim.App.1981); *see also Lane v. State,* 151 S.W.3d 188, 193 (Tex.Crim.App.2004) (stating any error in admitting evidence is cured where the same evidence is admitted elsewhere without objection). Thus, on this record, we cannot conclude appellant suffered harm. Appellant's second issue is overruled.

*Reformation of the Judgments*

In a cross-point, the State requests that we reform the judgments to correctly identify the judges who presided over this case at trial. This court has the power and even a duty to correct a clerical error on a judgment form to properly reflect what occurred in the trial court as shown by the record. TEX.R.APP. P. 43.2(b); *French v. State,* 830 S.W.2d 607, 609 (Tex.Crim.App.1992). The judgments state that Judge Suzanne Wooten presided over the trial of this matter. But the record reflects that Judge Quay Parker presided over the guilt/innocence phase and Judge John McCraw, Jr. presided over the punishment phase of trial. Therefore, we sustain the State's cross-point and reform the judgments to reflect that Judge Quay Parker presided over the guilt/innocence phase and Judge John McCraw, Jr. presided over the punishment phase of this trial. As reformed, the trial court's judgments are affirmed.

**All Citations**

Not Reported in S.W.3d, 2012 WL 472920

**Footnotes**

| | |
|---|---|
| 1 | Hill possessed similar false identification in the name of "Michael Mu'ur El." |
| 2 | On cross-examination, appellant testified he believes the "Republic of Mu'ur" is located "somewhere in Morocco." |

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.