IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>           **Plaintiff,**<br><br>vs.<br><br>**ERIC REED MARASCIO (6),**<br>           **Defendant.** | CASE NO: 4:22-CR-110-SDJ-CAN |

### ORDER OF DETENTION PENDING TRIAL

**Part I – Eligibility for Detention**

Upon the

☐ Motion of the Government pursuant to 18 U.S.C. § 3142(f)(1), or

☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This Order sets forth the Court's finding of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

**Part II – Findings of Fact and Law as to Presumptions under § 3142(e)**

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** (*previous violator*): There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

   ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; or

   ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; or

   ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); or

   ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

☐ **(e)** any felony that is not otherwise a crime of violence but involves: (i) a minor victim; (ii) the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); (iii) any other dangerous weapon; or (iv) a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; and

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** (*narcotics, firearm, other offenses*): There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**:

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis.

OR

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III – Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven by:

☐ clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

Defendant is charged with violating 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud). The United States moved to detain Defendant pending trial. The Court held a detention hearing on May 31, 2022. The United States was represented by Assistant United States Attorney Glenn Jackson, and Defendant was represented by James Whalen. The Court finds Defendant should be detained pending trial.

Special Agent Kristen Brown ("Agent Brown") of the Federal Bureau of Investigation ("FBI") testified regarding the details of the alleged offenses and the investigation leading to Defendant's arrest. Defendant is charged with participating in a wire fraud conspiracy (the "Conspiracy") along with at least eighteen other co-defendants. The Conspiracy is believed to have defrauded the U.S. Government of approximately 3.5 million dollars by fraudulently obtaining loans through the U.S. Small Business Administration's Paycheck Protection Program ("PPP Loans"). According to Agent Brown, on or about June 23, 2020, Defendant obtained a PPP loan of just over $225,000 to allegedly support Defendant's business, Hazelnut Café. Agent Brown testified that Defendant obtained the PPP Loan based on false information and supporting documentation and that the address associated with Hazelnut Café is a post office box. Agent Brown further testified the loan proceeds were wired to a bank account owned solely by Defendant. According to Agent Brown, Defendant spent the loan proceeds within one week of receipt by purchasing a truck using a cashier's check and wiring the remaining loan proceeds to co-conspirators. Agent Brown testified these were not permitted uses of the PPP Loan, which was required to be used for certain business-related expenses. During the hearing, Defendant's girlfriend, Jamie McCarty, confirmed that Hazelnut Café does not have a store front. Ms. McCarty testified that Hazelnut Café does not have employees and that Defendant, with assistance from his mother, operates Hazelnut Café only at festivals.

Defendant has prior criminal history and was on parole when he obtained the PPP Loan:

- In 2002, Defendant was charged with Aggravated Promotion of Prostitution and Engaging in Organized Criminal Activity. He was sentenced to two years of probation for the former; the latter charge was dismissed.
- In 2008, Defendant was charged with money laundering, for which he was sentenced to 75 years' imprisonment. Defendant was released on parole in 2016. Defendant was also charged with Engaging in Organized Criminal Activity and False Statement for Property/Credit, but those charges were dismissed.
- In 2009, Defendant was charged with three counts of Bail Jumping and Fail to Appear. Defendant was sentenced to 8 years' imprisonment for each count. Defendant was also charged with Tamper with Government Record Defraud/Harm and an additional three counts of Bail Jumping and Fail to Appear, but those charges were dismissed. Defendant was also charged in South Carolina with Fugitive From Justice Warrant, the disposition of which is unknown to the Court.

Defendant's 2009 charges for Bail Jumping and Fail to Appear are particularly relevant to the issue of pretrial detention. In 2008, Defendant was arrested for making a false statement to obtain property or credit, money laundering, and engaging in organized criminal activity. *Marascio v. Texas*, No. 05-10-1025, 2012 WL 472920, at *1 (Tex. App.—Dallas Feb. 15, 2012, pet. ref'd). Defendant was released pending trial and, as conditions of release, Defendant was required to wear an electronic leg monitor at all times and be present at all court settings. *Id.* After Defendant was released, he met with men who claimed they could eliminate Defendant's criminal charges if Defendant traveled to Washington, D.C., to renounce his United States citizenship. *Id.* Subsequently, Defendant failed to appear for both his pretrial conference and his trial setting. *Id.* Defendant also withdrew all funds from his bank account and removed his electronic leg monitor. *Id.* Defendant then hid from law enforcement at a friend's apartment for approximately one month while he prepared to travel to Washington,

D.C. *Id.* Defendant traveled to Washington, D.C., with Michael Hill, *id.*, who is a co-defendant in this case and leader in the Conspiracy. The two were ultimately apprehended and arrested in South Carolina. *Id.* Upon arrest, Defendant identified himself as "Reed Marcon." *Id.* Defendant had in his possession a "World Government of World Citizens Passport" issued by the "World Service Authority," photo identification that identified Defendant as "Reed Marcon El," a "Moor National," and a debit card in the same name. *Id.* When asked about the false passport, Defendant testified that he'd changed his name and that the name on the false passport was his name in the "Republic of Mu'ur," which Defendant testified is "somewhere in Morocco." *Id.* at *3 n.2.

Agent Brown testified that, even today, both Defendant's parole officer and the FBI have had difficulty locating Defendant. Agent Brown testified that, prior to Defendant's arrest in the instant case, Defendant's parole officer could not locate Defendant at Defendant's reported address. After several failed attempts to locate Defendant, the parole officer notified Defendant that he intended to have a warrant issued for Defendant's arrest if Defendant did not respond. Only then did Defendant report to his parole officer at Defendant's reported address. Testimony elicited during the Hearing revealed that Defendant was residing with Ms. McCarty at the time and not with his parents, as reported. Agent Brown further testified that the FBI had trouble locating Defendant prior to his arrest in this case. The FBI ultimately used a "ping order" to locate Defendant.

Agent Brown testified that, if released, there is a risk Defendant would obstruct justice and/or flee from prosecution.

Defendant submitted seven character letters to support his request for pretrial release. Most of the letters refer to Defendant by his legal name, Eric Marascio; one letter refers to Defendant by his pseudonym, Phoenix Marcon. The letters speak to Defendant's good character, ties to the community, and charitable nature, but do not address Defendant's previous failures to appear in court or his prior attempt to flee prosecution.

Ms. McCarty testified as a willing third-party custodian. Ms. McCarty testified she has known Defendant for approximately four years and that the two have been in a relationship for approximately three years. Ms. McCarty testified that Defendant resides with her and that she was aware Defendant did not report the couple's address to his parole officer.

The Court finds, based on the evidence presented, the Government has met its burden that Defendant's release would pose a risk of flight and a danger of obstruction of justice. The United States' Motion for detention is **GRANTED**. Defendant shall be detained pending trial.

In addition to any findings above or other findings made on the record at the hearing, the reasons for detention include the following:

- ☒ Weight of evidence against the defendant is strong

- ☒ Subject to lengthy period of incarceration if convicted

- ☒ Prior criminal history

- ☒ Participation in criminal activity while on probation, parole, or supervision

- ☐ History of violence or use of weapons

- ☐ History of alcohol or substance abuse

- ☐ Lack of stable employment

- ☐ Lack of stable residence
- ☐ Lack of financially responsible sureties
- ☐ Lack of significant community or family ties to this district
- ☐ Significant family or other ties outside the United States
- ☐ Lack of legal status in the United States
- ☐ Subject to removal or deportation after serving any period of incarceration
- ☒ Prior failure to appear in court as ordered
- ☒ Prior attempt(s) to evade law enforcement
- ☒ Use of alias(es) or false documents
- ☐ Background information unknown or unverified
- ☒ Prior violations of probation, parole, or supervised release

## Part III - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**So ORDERED and SIGNED this 2nd day of June, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE